In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2825

CINCINNATI INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

H.D. SMITH, L.L.C.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:12-cv-3289 — **Richard Mills**, *Judge*.

ARGUED APRIL 11, 2016 — DECIDED JULY 19, 2016

Before BAUER and WILLIAMS, *Circuit Judges*, and
ADELMAN, *District Judge*.[*]

WILLIAMS, *Circuit Judge*. According to West Virginia, it
faces an "epidemic of prescription drug abuse" that costs it
hundreds of millions of dollars every year. Seeking some re-

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

lief, the state sued pharmaceutical distributors, asserting a variety of legal claims. One of the distributors, H.D. Smith, asked its insurer, Cincinnati Insurance Company, to defend the suit. Instead Cincinnati filed this suit seeking a declaration that its policy does not cover the suit filed by West Virginia. The district court agreed with Cincinnati and granted its motion for summary judgment. But the plain language of the policy requires Cincinnati to defend a suit brought by a plaintiff to recover money paid to care for someone who was injured by H.D. Smith. West Virginia's suit fits that description so we reverse.

## I. BACKGROUND

West Virginia sued H.D. Smith and other pharmaceutical distributors, seeking to hold them liable for contributing to the state's epidemic of prescription drug abuse. The complaint alleged that certain pharmacies—pejoratively called "pill mills"—knowingly provided citizens with hydrocodone, oxycodone, codeine, and other prescription drugs, not for legitimate medical uses but to fuel and profit from the citizens' addictions. The pharmacies ordered the drugs from the defendant distributors in huge quantities—quantities so large that West Virginia contends the distributors should have known the drugs would be used for illicit and destructive purposes. West Virginia alleged that the defendant distributors "acted negligently, recklessly, and in contravention of West Virginia law," and cost the state hundreds of millions of dollars every year. Among other things, that money was spent caring for drug-addicted West Virginians who suffer drug-related injuries and cannot pay for their own care.

At relevant times, H.D. Smith was covered by a general commercial liability insurance policy issued by Cincinnati

Insurance Company. Under the policy, Cincinnati agreed to cover damages that H.D. Smith became legally obligated to pay "because of bodily injury." Cincinnati also agreed to defend H.D. Smith against any suit seeking such damages. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." And "damages because of bodily injury" include "damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury."[1]

H.D. Smith asked Cincinnati to defend the suit brought by West Virginia, but Cincinnati refused. Cincinnati filed suit in federal court, seeking a declaration that its policy did not cover West Virginia's suit. Granting Cincinnati's motion for summary judgment, the district court held that West Virginia's suit did not seek damages "because of bodily injury." H.D. Smith appeals.

## II. ANALYSIS

The issue is contract interpretation and the posture is an appeal of summary judgment, so our review is de novo. *Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013); *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818 (7th Cir. 2008). The parties agree that their contract is governed by Illinois law—H.D. Smith is based in Illinois—so we apply that substantive law. *See Koransky*, 712 F.3d at 341.

---

[1] The policy requires that the injury be caused by an "occurrence" that takes place in the "coverage territory" during the policy period, but these requirements are not at issue on appeal.

Our job is to "compare the allegations in the underlying complaint to the policy language in order to determine whether the insurer's duty to defend has arisen." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). We must "liberally constru[e]" the allegations "in favor of the insured." *Id*. And because the duty to defend is "much broader" than the duty to indemnify, we will hold that a duty to defend exists "unless it is clear from the face of the underlying complaint" that the case is not "within *or potentially within* the insured's policy coverage." *Id*. (emphasis added). Importantly, "if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *Id*.

The policy that Cincinnati issued to H.D. Smith covers suits seeking damages "*because of* bodily injury." Such a policy provides broader coverage than one that covers only damages "*for* bodily injury." *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010) (applying Illinois law). We explained that result with the following example:

> [A]n individual has automobile insurance; the insured individual caused an accident in which another individual became paralyzed; the paralyzed individual sues the insured driver only for the cost of making his house wheelchair accessible, not for his physical injuries. If the insured driver had a policy that only covered damages "for bodily injury" it would be reasonable to conclude that the damages sought in the example do not fall within the in-

surer's duty. However, if the insurance contract provides for damages "because of bodily injury" then the insurer would have a duty to defend and indemnify in this situation. *Id*.

Here, West Virginia alleged that its citizens suffered bodily injuries and the state spent money caring for those injuries—money that the state seeks in damages. On its face, West Virginia's suit appears to be covered by Cincinnati's policy. Cincinnati argues to the contrary, stressing that West Virginia seeks its own damages, not damages on behalf of its citizens. But so what? Cincinnati's argument is untethered to any language in the policy. At oral argument, we discussed the following example. Suppose a West Virginian suffers bodily injury due to his drug addiction and sues H.D. Smith for negligence. Cincinnati's counsel acknowledged that such a suit would be covered by its policy. Now suppose that the injured citizen's mother spent her own money to care for her son's injuries. Cincinnati's counsel acknowledged that her suit would be covered too—remember the policy covers "damages claimed by any person or organization for care … resulting … from the bodily injury."

The mother's suit is covered even though she seeks *her own* damages (the money she spent to care for her son), not damages on behalf of her son (such as his pain and suffering or money he lost because he missed work). Legally, the result is no different merely because the plaintiff is a state instead of a mother. Cincinnati's lawyer acknowledged as much but argued this case is different *in fact* because West Virginia does not actually seek reimbursement for money it spent because of its citizens' injuries. Cincinnati argues—and the district court held—that this suit is like *Medmarc*, where

we held that no duty to defend arose. But *Medmarc* is readily distinguishable. In that case, the insured party sold baby bottles and similar consumer products. When buyers learned that the products contained a dangerous chemical, they refused to use them. The buyers filed suit, complaining about the money they wasted by buying unusable products. But importantly, "the plaintiffs never allege[d] that they or their children ever used the products or were actually exposed to the [harmful chemical]." 612 F.3d at 610. In other words, there was "no claim of bodily injury in any form." *Id*. at 616.

West Virginia's complaint is quite different. The state alleges that H.D. Smith negligently distributed drugs that were "consumed by persons then residing in West Virginia." In so doing, H.D. Smith "interfered with the right of West Virginians to be free from unwarranted injuries, addictions, diseases and sicknesses." H.D. Smith's actions caused West Virginia to spend money "addressing and combating the prescription drug abuse epidemic." In particular, "[h]ospital services … are being consumed by persons with prescription drug abuse issues," many of whom "have no medical insurance coverage." So the state has incurred "excessive costs related to diagnosis, treatment and cure of addiction," and has "provide[d] necessary medical care, facilities, and services for treatment of citizens" who cannot afford their own care. West Virginia seeks reimbursement of such "damages and losses sustained as the proximate result" of H.D. Smith's negligence.

To be sure, West Virginia asserts numerous legal theories and seeks a variety of remedies, but the duty to defend arises "even if only one of several theories is within the potential coverage of the policy." *Midwest Sporting Goods*, 828 N.E.2d

at 1098 (Ill. 2005). Given West Virginia's allegations described above, Cincinnati has a duty to defend H.D. Smith.

### III. CONCLUSION

We REVERSE the judgment of the district court.