[Cite as *Cincinnati Ins. Co. v. Discount Drug Mart, Inc.*, 2021-Ohio-4604.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CINCINNATI INSURANCE      :
COMPANY,                        :

       Plaintiff-Appellant,     :

                            No. 110151

       v.                   :

DISCOUNT DRUG MART, INC.,    :

       Defendant-Appellee.    :

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  December 30, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-913990

### *Appearances:*

Collins, Roche, Utley & Garner, L.L.C., Richard M. Garner,
and David L. Lester, *for appellant.*

Cavitch, Familo & Durkin, Co., LPA, and Gregory E.
O'Brien, *for appellee.*

MARY J. BOYLE, A.J.:

{¶ 1} Plaintiff-appellant, the Cincinnati Insurance Company ("Cincinnati"), appeals from the trial court's order granting the summary judgment motion of defendant-appellee, Discount Drug Mart ("DDM"), and denying Cincinnati's summary judgment motion.  The trial court found and declared that

Cincinnati has a duty to defend DDM against lawsuits brought by Cuyahoga and Summit Counties for DDM's alleged role in the opioid epidemic. Cincinnati raises one assignment of error for our review:

> The trial court erred in granting the Motion for Summary Judgment of [DDM] and finding that [Cincinnati] has a duty to defend [DDM] against opioid lawsuits brought by local governments for public nuisance and civil conspiracy.

{¶ 2} Finding no merit to the assignment of error, we affirm the trial court's judgment.

## I. Procedural History and Factual Background

{¶ 3} In April 2019, Cincinnati filed a declaratory judgment action against DDM, seeking a judgment "determining and declaring that [Cincinnati] has no duty to defend or indemnify DDM" for any claims brought against DDM in six federal lawsuits. Cincinnati also requested that the trial court "determine the nature and extent of Cincinnati's contribution rights, and such other or further relief as may be just and proper."

{¶ 4} In July 2019, DDM filed a motion to transfer the case to Medina County because the insurance policies were issued to DDM at its home office in Medina. Cincinnati opposed the transfer, arguing that Cuyahoga County is where DDM conducted the activity that gave rise to the underlying litigation. The trial court denied the motion to transfer, noting that both Cuyahoga County and Cleveland are parties to the underlying litigation, and the underlying cases allege that DDM distributed controlled substances and caused harm in Cuyahoga County.

{¶ 5} In August 2020, DDM filed a "Statement in Lieu of Answer." DDM explained that at a case management conference, the trial court gave Cincinnati leave to file an amended complaint, and the trial court and Cincinnati agreed to allow DDM to file an answer to the amended complaint instead of the original complaint.

{¶ 6} In September 2019, Cincinnati filed, with leave of court, an amended complaint, identifying additional opioid-related lawsuits in which DDM was a defendant. The amended complaint brought the total number of underlying actions to 27.

{¶ 7} DDM filed an answer to the amended complaint and a counterclaim for declaratory judgment against Cincinnati. The counterclaim requested that the trial court "enter declaratory judgment in [DDM's] favor and find and declare that Cincinnati is obligated to continue defending [DDM] in the underlying suits as well as to indemnify it and pay damages that [DDM] becomes legally obligated to pay to the plaintiffs in the underlying suits." The counterclaim also included a jury trial demand. Cincinnati filed an answer to the counterclaim.

{¶ 8} In December 2019, the parties filed, pursuant to Civ.R. 42(B), a joint motion to bifurcate the coverage issues arising from the Cuyahoga and Summit County lawsuits, *Cuyahoga v. Purdue Pharma, LP, et al.,* N.D.Ohio No. 1:17-OP-45004, and *Summit v. Purdue Pharma, LP, et al.*, N.D.Ohio No. 1:18-OP-45090, both of which were pending in the Northern District of Ohio as part of the National Prescription Opiate Litigation MDL, N.D.Ohio No. 1:17-MD-02804. The parties

asked the trial court to stay the coverage issues arising from the remaining underlying cases. The trial court granted the motion.

{¶ 9} In April 2020, the parties each filed a motion for summary judgment.[1] They also filed a five-part stipulation of facts and documents. The stipulation contained 20 exhibits, and the parties stipulated to the authenticity of these documents. The parties included in their stipulation the lengthy, operative complaints from the Cuyahoga and Summit County cases. For the Cuyahoga County case, the parties included the 357-page third amended complaint and the 50-page "amendment by interlineation" to the third amended complaint. For the Summit County case, the parties likewise included the 335-page third amended complaint and the 47-page "amendment by interlineation" to the third amended complaint.

{¶ 10} These four documents allege that DDM distributed and sold "opioids in ways that facilitated and encouraged their flow into the illegal, secondary market"; distributed "opioids without maintaining effective controls against the diversion of opioids"; chose not to "effectively monitor for," investigate, report, or "stop or suspend shipments of" suspicious orders; and distributed and sold "opioids prescribed by 'pill mills'" when DDM "knew or should have known the opioids were being prescribed by 'pill mills.'" The counties claim that DDM's conduct caused "a dramatic increase in opioid abuse, addiction, overdose, and death throughout" the counties. The counties asserted claims against DDM for statutory public nuisance,

---

[1] In May 2020, DDM filed a motion to strike an affidavit from Cincinnati's summary judgment motion that attached as exhibits seven filings from the MDL litigation. After full briefing, the trial court denied the motion to strike.

common law absolute public nuisance, negligence, injury through criminal acts in violation of R.C. 2307.60, unjust enrichment, and civil conspiracy for DDM's alleged wrongful conduct in distributing prescription opioids.[2]

{¶ 11} The parties also included in their stipulation of facts and documents copies of the three commercial general liability insurance policies that Cincinnati issued to DDM between 2006 and 2018. The relevant language in the policies is substantially the same. The policies state in relevant part the following:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit that may result[.]"
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence." * * *
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period. * * *

{¶ 12} The policies define "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." They define "occurrence" as "an accident, including continuous or repeated

---

[2] As discussed more fully below, the counties later voluntarily dismissed four of their claims without prejudice, pursuant to Fed.R.Civ.P. 41(a)(1), leaving only the claims for common law absolute public nuisance and civil conspiracy.

exposure to substantially the same general harmful conditions." The policies do not define the term "damages." The policies also contain one or more endorsements providing professional liability coverage, which likewise limit coverage to damages because of bodily injury.

{¶ 13} On September 9, 2020, after full briefing, the trial court granted DDM's summary judgment motion and denied Cincinnati's motion with a detailed opinion. The trial court found and declared that Cincinnati had a duty to defend DDM in the Cuyahoga and Summit County cases but found that the issue of indemnification was not yet ripe for review because no judgment against DDM had yet been entered.

{¶ 14} On September 30, 2020, Cincinnati filed a motion for the trial court to certify its judgment under Civ.R. 54(B) and add the language "no just reason for delay." Cincinnati argued that the trial court's judgment affected a substantial right in a special proceeding and that delaying an appeal until the underlying litigation is fully resolved would cause Cincinnati to continue to incur "tremendous" defense expenses. DDM filed an opposition, arguing that the trial court's judgment did not fully adjudicate any of the parties' claims, and Civ.R. 54(B) certification could not transform the judgment into a final order. Cincinnati filed a reply in support of its motion. On November 6, 2020, the trial court granted DDM's motion without an opinion. The trial court then issued a "nunc pro tunc entry as of [and] for 09/09/2020" that added the Civ.R. 54(B) language to its order granting DDM's summary judgment motion and denying Cincinnati's motion.

**{¶ 15}** Cincinnati appealed from this order six days later. This court sua sponte ordered the parties to brief whether the trial court's judgment was a final, appealable order, and whether the notice of appeal was timely. The parties submitted supplemental briefing.

## II. Final Order

**{¶ 16}** DDM argues that the trial court's judgment is not a final, appealable order because it did not fully resolve any claim: the trial court has yet to resolve the issues of Cincinnati's duty to indemnify as well as the parties' rights with respect to the underlying cases other than the Cuyahoga and Summit County cases. However, Cincinnati maintains that the trial court's order is final because it affects a substantial right (its duty to defend) in a special proceeding (the declaratory judgment action), and that in the context of a declaratory judgment action, the issue of the duty to defend can be isolated for appeal.

**{¶ 17}** The jurisdiction of a court of appeals is constitutionally limited to the review of "final" orders. *See* Article IV, Section 3(B)(2), Ohio Constitution. To be a final, appealable order, the order must meet the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Madfan, Inc. v. Makris*, 8th Dist. Cuyahoga No. 102179, 2015-Ohio-1316, ¶ 6, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989).

**{¶ 18}** R.C. 2505.02(B) defines the types of orders that can be "final." Pursuant to R.C. 2505.02(B)(2), an order is final if it "affects a substantial right made in a special proceeding or upon a summary application in an action after

judgment." A declaratory judgment action is a special proceeding for purposes of R.C. 2505.02(B)(2). *Walburn v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, ¶ 21. Furthermore, "[t]he duty to defend involves a substantial right to both the insured and the insurer." *General Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 540 N.E.2d 266, 22 (1989). The trial court's order in the declaratory judgment action finding that Cincinnati has a duty to defend DDM is therefore final under R.C. 2505.02(B)(2).

{¶ 19} The trial court also met the requirements of Civ.R. 54(B). "Civ.R. 54(B) applies in multiple-claim or multiple-party actions where fewer than all the claims or fewer than all the parties are adjudicated." *Gen. Acc. Ins. Co.* at 22. "If a court enters final judgment as to some but not all of the claims and/or parties, the judgment is a final appealable order only upon the express determination that there is no just reason for delay." *Id.* There are multiple claims in this action, including Cincinnati's claim for contribution that is still pending. But the trial court expressly determined in its nunc pro tunc journal entry that there is no just reason for delay.

{¶ 20} We note that the trial court's order would not have been final under R.C. 2505.02(B)(1), which states that an order is final if it "affects a substantial right in an action that in effect determines the action and prevents a judgment." The trial court's order does not in effect determine the action and prevent a judgment. As DDM points out, the trial court's order resolved only whether Cincinnati has a duty to defend DDM in the Cuyahoga and Summit County cases, and the issue of Cincinnati's duty to defend in the remaining underlying cases is still pending, as is

the issue of Cincinnati's duty to indemnify. But because the trial court's judgment was made in a declaratory judgment action, R.C. 2505.02(B)(2) governs instead. R.C. 2505.02(B)(2) requires only that an order affect a substantial right, not also that the order in effect determine the action and prevent a judgment. *See Gen. Acc. Ins. Co.* at 21 ("Since this is an action for declaratory judgment[,] we are not concerned with the first part of R.C. 2505.02 which states that a final order is one 'that affects a substantial right in an action which in effect determines the action and prevents a judgment * * *.' Instead, we will address the issue of whether a declaratory judgment action is a special proceeding and whether determination of the claim of duty to defend affects a substantial right.").

{¶ 21} DDM argues that this case is like *Walburn*, 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, in which the Ohio Supreme Court found that a declaratory judgment that an insured is entitled to uninsured motorist coverage but that does not address damages does not affect a substantial right. *Id.* at ¶ 26. DDM compares the holding in *Walburn* to the trial court's finding in the present case that Cincinnati had a duty to defend but not a duty to indemnify. But the court in *Walburn* explicitly drew a distinction between uninsured motorist coverage and a duty to defend. The court explained that the duty to defend has "immediate consequences to both the insured and the insurer":

> If an insurer mistakenly refuses to defend its insured, that insurer is liable for the costs of defending its insured in the initial litigation and of defending itself in a subsequent action by its insured. On the other hand, the insurer may incur substantial costs if wrongfully required to

defend an insured in a case that a court may later hold was not within the terms of the policy. [*Gen. Acc. Ins. Co.*] at 21.

Likewise, an insured, when not provided a defense, may have to choose a quick settlement over costly litigation, file a separate declaratory judgment action against the insurer, or incur great expense defending without insurance. *Id.* at 22. Because the duty to defend was of great importance to both the insured and the insurer, we concluded [in *Gen. Acc. Ins. Co.*] that it involved a substantial right. *Id.*

*Walburn* at ¶ 24-25, citing *Gen Acc. Ins. Co.* at 21.

{¶ 22} The court explained that uninsured motorist coverage "presents a different scenario" because an insurer is obligated to pay an insured for uninsured motorist coverage only if the insured is awarded damages. *Walburn* at ¶ 26. "While a decision regarding the duty to defend immediately affects a substantial right of the insured or insurer, a decision that an insured is entitled to [uninsured motorist] coverage, without a determination of damages, does not." *Id.* at ¶ 27.

{¶ 23} Accordingly, we find that the trial court's judgment is a final, appealable order.

{¶ 24} We also find that Cincinnati's notice of appeal was timely. App.R. 4(A)(2) provides that "a party who wishes to appeal from an order that is not final upon its entry but subsequently becomes final * * * shall file the notice of appeal required by App.R. 3 within 30 days of the date on which the order becomes final." The trial court granted DDM's summary judgment motion on September 9, 2020, but it did not add the "no just reason for delay" language until its order on November 6, 2020. Cincinnati could not have appealed from the September 9 order within 30 days because without the "no just reason for delay" certification, the September 9

order was not a final, appealable order. Cincinnati filed its notice of appeal from the November 6, 2020 judgment (which was a final, appealable order) on November 12. This notice of appeal was within 30 days of the November 6 judgment and was therefore timely. *See, e.g., Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 617 N.E.2d 1136 (1993) (finding the appellate court had jurisdiction over an appeal in which the appellants filed their notice of appeal from a nunc pro tunc judgment entry adding "no just reason for delay" to an order entered over two months earlier). Accordingly, we address the merits of Cincinnati's appeal.

## III. Law and Analysis

{¶ 25} In its sole assignment of error, Cincinnati argues that the trial court erred in ruling that it has a duty to defend DDM in the underlying Cuyahoga and Summit County cases. Cincinnati contends that it is not required to defend DDM because the underlying "lawsuits do not seek (1) damages[,] (2) because of bodily injury[,] and (3) caused by an occurrence," and Cincinnati's commercial general liability insurance policies require all three elements.

{¶ 26} A declaratory judgment action is statutory. *See* R.C. 2721.01 through 2721.15. "The Declaratory Judgments Act was fashioned to provide remedies where none exists, in the situation where a particular controversy has not advanced to the point where a conventional remedy is reasonably available." *D.H. Overmyer Telecasting Co. v. Am. Home Assur. Co.*, 29 Ohio App.3d 31, 32, 502 N.E.2d 694 (8th Dist.1986). "The entertainment of a declaratory judgment action rests within the sound discretion of the trial court." *Id.*

{¶ 27} A declaratory judgment may be commenced as set forth in R.C. 2721.03:

> [A]ny person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

{¶ 28} We review the trial court's judgment granting DDM's motion for summary judgment on its declaratory judgment action de novo. *Citizens Bank, N.A. v. Richer*, 8th Dist. Cuyahoga No. 107744, 2019-Ohio-2740, ¶ 28. Thus, we independently "examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997). We therefore review the trial court's order without giving any deference to the trial court. *Citizens Bank* at ¶ 28. "On appeal, just as the trial court must do, we must consider all facts and inferences drawn in a light most favorable to the nonmoving party." *Glemaud v. MetroHealth Sys.*, 8th Dist. Cuyahoga No. 106148, 2018-Ohio-4024, ¶ 50.

{¶ 29} Pursuant to Civ.R. 56(C), summary judgment is proper where (1) "there is no genuine issue as to any material fact," (2) "the moving party is entitled to judgment as a matter of law," and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Harless v. Willis Day Warehousing Co.*, 54 Ohio

St.2d 64, 66, 375 N.E.2d 46 (1978). Trial courts should award summary judgment only after resolving all doubts in favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶ 30} The parties agree that a declaratory judgment is appropriate in this case and that there are no material facts in dispute. We are therefore presented with only a question of law concerning the interpretation of the insurance policies. We must determine whether the allegations in the underlying lawsuits "state a claim which is potentially or arguably within the policy coverage." *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180, 459 N.E.2d 555 (1984). An insurer's duty to defend is broad, and an insurer "must accept the defense of the claim" even where "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded." *Id.* If policy provisions "are susceptible of more than one interpretation," we must strictly construe them against the insurer. *Ohio Govt. Risk Mgmt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 28, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988). Accordingly, we must look to the claims in the underlying lawsuits and the language of the insurance policies to determine whether the allegations are potentially or arguably within the policy coverage.

{¶ 31} As an initial matter, the parties dispute which of the underlying claims we can consider because the counties have voluntarily dismissed four of their

claims without prejudice, pursuant to Fed.R.Civ.P. 41(a)(1), leaving only the claims for common law absolute public nuisance and civil conspiracy. DDM argues that we can consider the allegations in all six of the claims against it. Cincinnati contends that we cannot consider the allegations in claims that have been dismissed, and we must determine whether the policies potentially or arguably cover the claims for absolute public nuisance or civil conspiracy.

{¶ 32} Both parties agree that the dismissal of the four claims was "not procedurally correct" because the counties attempted to dismiss only some of their claims, rather than the entire action. It is well settled that Fed.R.Civ.P. 41(a)(1) cannot be used to dismiss fewer than all the claims in an action. *See, e.g., Hart v. Paint Valley Local School Dist.*, S.D.Ohio No. C2-01-004, 2002 U.S. Dist. LEXIS 25720, 15, fn. 11 (Nov. 15, 2002) ("Rule 41(a), however, may not be employed to dismiss fewer than all of the claims against any particular[] defendant because a voluntary dismissal under this Rule terminates the 'action,' which comprehends the totality of all causes of action asserted against the defendant."). DDM maintains that the dismissal is therefore a "nullity," but Cincinnati argues that the dismissal nonetheless reflects the "abandonment of the claims."

{¶ 33} We need not address the parties' arguments about whether we can consider the "abandoned" claims because, as discussed below, we find that the claims for absolute public nuisance are potentially or arguably within the commercial general liability insurance policies. "Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within

the complaint, even if they bear no relation to the insurance-policy coverage." *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 189, 2006-Ohio-2180, 846 N.E.2d 833. Therefore, as we apply the language of the insurance policies to the allegations in the underlying litigation, we will discuss only the allegations pertaining to the claims for absolute public nuisance.

{¶ 34} Cincinnati maintains that it has no duty to defend DDM in the underlying litigation because the allegations for absolute public nuisance do not fall within the policies' meanings of the terms "damages," "because of bodily injury," and "caused by an occurrence." We will address each term.

**A. "Damages"**

{¶ 35} Cincinnati argues that the insurance policies do not cover the underlying claims for absolute public nuisance because the policies cover only legal damages, and the counties seek equitable relief. Cincinnati maintains that the MDL court has stated that the only remedy for the counties' absolute public nuisance claims is the "forward-looking, equitable remedy of abatement," not damages to compensate for a suffered loss. Cincinnati also argues that only tort claims against the insured for legal damages trigger the policies.

{¶ 36} In support of its position, Cincinnati relies on *Ellett Brothers, Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384 (4th Cir.2001), in which the Fourth Circuit found that an insurer had no duty to defend a gun manufacturer in a suit alleging that the manufacturer and other entities negligently distributed handguns in a way that facilitated an unlawful underground market for handguns. The plaintiffs in the

underlying suit sought injunctive relief, including a request that the defendants contribute to a fund to abate the alleged public nuisance. *Id.* at 386-387. The court found that the plaintiffs in the underlying case sought "forward-looking, prospective relief — not compensation for past injuries inflicted," the plaintiffs were not seeking "damages," and the insurer had no duty to defend. *Id.* at 388.

{¶ 37} The Southern District of Ohio analyzed *Ellett Bros.* in the context of applying Ohio law in *Amerisure Ins. Co. v. Acusport Corp.*, S.D.Ohio No. 2:01-cv-683, 2004 U.S. Dist. LEXIS 6901, 27 (Jan. 30, 2004). The court in *Amerisure* pointed out that the presiding district court judge in the *Ellett Bros.* case, who found that the insurer had no duty to defend the gun manufacturer, resolved a similar case based on the same underlying litigation in favor of the insured. In *Scottsdale Ins. Co. v. RSR Mgt. Co.*, E.D.N.Y. No. 00 CV 1793, 2000 U.S. Dist. LEXIS 14160 (Sept. 26, 2000), the judge, applying New York law, found that the insurer did have a duty to defend the insured where the complaint sought contribution to a fund for the education, supervision, and regulation of gun dealers. The Southern District of Ohio explained that *Ellett Brothers* and *Scottsdale* interpreted the same policy language in connection with the same underlying action but nonetheless disagreed about whether the underlying action sought "damages." *Amerisure* at 29. *Amerisure* involved the same policy language and underlying litigation as *Ellett Bros.* and *Scottsdale*, and the Southern District of Ohio found that the conflicting outcomes in *Ellett Bros.* and *Scottsdale* "certainly supports a finding that the nature of the relief requested *arguably* falls within the scope of the policy's coverage, thereby triggering

a duty to defend." (Emphasis sic.) *Id.* The Southern District of Ohio noted that *Ellett Bros.* applied South Carolina law, *Scottsdale* applied New York law, and Ohio law did not appear to provide any guidance on whether the term "damages" in the insurance context is broad enough to include a claim for equitable relief in the form that the plaintiffs were requesting in the underlying handgun litigation. *Amerisure* at 29-30.

{¶ 38} The court in *Amerisure* explained (as Cincinnati argues here) that Ohio courts have generally found suits requesting equitable relief to be outside of the duty to defend set forth in commercial general liability insurance policies. *Id.* at 31. However, there are "'significant exceptions'" to this general rule. *Id.* at 31, quoting Eric Mills Holmes, *Holmes' Appleman on Insurance 2d Archive*, Section 129.2, 81082 (2002). The exceptions include contribution for clean-up costs in environmental cases even though such costs are an equitable remedy. *Id.* at 34; *see also Sanborn Plastics Corp. v. Saint Paul Fire & Marine Ins. Co.*, 84 Ohio App.3d 302, 316, 616 N.E.2d 988 (11th Dist.1993) (finding that the costs for environmental cleanup were "damages" under the insurance policy even though the remedy was equitable in nature).

{¶ 39} The court in *Amerisure* pointed to *Stychno v. Ohio Edison Co.*, 806 F.Supp. 663 (N.D.Ohio 1992), which found that a demand for costs for environmental clean-up is "tantamount to a claim for damages" triggering a duty to defend. The court in *Stychno* explained that the "insured ought to be able to rely on the common[-]sense expectation that property damages within the meaning of the

policy includes a claim which results in causing him to pay sums of money because his acts or omissions affected adversely the rights of third parties." *Stychno* at 675. The court in *Amerisure* extended this reasoning to the equitable relief sought in the handgun litigation, finding that the insured gun manufacturer "may have a 'common[-]sense expectation' that if it is made to pay sums of money because its acts or omissions adversely affected the rights of third parties, its insurance policy would cover that loss." *Amerisure* at 33. The Southern District of Ohio ultimately found that in the absence of Ohio law providing guidance, it "must conclude" that the payment of money into a fund to abate the nuisance of unregulated handguns "*arguably* or *potentially* falls within the scope of the policy's coverage." (Emphasis sic.) *Id.*

{¶ 40} We are persuaded by the Southern District of Ohio's reasoning and holding in *Amerisure*. We have likewise found a scarcity of Ohio cases that provide guidance on whether the type of relief that the counties seek in the underlying litigation are "damages" within the meaning of commercial general liability insurance policies. Cincinnati cites numerous cases from across the country for the principles that commercial general liability policies are triggered only by tort liability for legal damages and do not cover claims seeking equitable relief. Of the cases applying Ohio law, Cincinnati cites to *Westfield Ins. Co. v. HealthOhio, Inc.*, 73 Ohio App.3d 341, 345, 597 N.E.2d 179 (3d Dist.), and *Detrex Chem. Industries, Inc. v. Emps. Ins. of Wausau*, 681 F.Supp. 438, 451, (N.D.Ohio 1988). In *Westfield*, the underlying lawsuit sought only injunctive relief, not equitable relief in the form

of paying money into an abatement fund. *Westfield* at 346. In *Detrex*, the underlying complaint also sought injunctive relief — that Detrex stop polluting water — and civil penalties for Detrex's failure to comply with statutory regulations. *Id.* at 451-452. The court found that the complaint did not seek damages "on account of property damage." *Id.* at 452. These cases do not address whether the term "damages" in commercial general liability insurance policies include the equitable remedy of payment into a fund to abate a public nuisance.

{¶ 41} To the contrary, the Fourth District has found that, in the insurance context, the term "damages" is "at best" ambiguous. *Wayne Mut. Ins. Co. v. McNabb*, 2016-Ohio-153, 45 N.E.3d 1081, ¶ 40 (4th Dist.). The court explained that it is "'not reasonable to expect that laypersons, corporations, attorneys and insurers who confront the term 'damages' in a myriad of contexts would all attach a common, single meaning to that term[.]'" *Wayne* at ¶ 40, quoting Miller, *Whether Govt. Compelled Cleanup Costs Constitute "Damages" Under CGL Policies: the Nationwide Environmental Liab. Dilemma and a California Model for its Resolution*, 16 Colum.J.Envtl.L. 103-104 (1991). Ambiguous provisions in an insurance policy are construed strictly against the insurer and in favor of the insured, especially if they purport to limit or qualify coverage under the policy. *Westfield Ins. Co. v. Hunter*, 128 Ohio St. 3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 11.

{¶ 42} Accordingly, we construe the term "damages" against the insurer, Cincinnati, and in favor of the insured, DDM. We find that the payment of money

into an abatement fund in this context, although an equitable remedy, arguably or potentially falls within the scope of the insurance policies here.

### B. "Because of Bodily Injury"

{¶ 43} Next, Cincinnati argues that Summit and Cuyahoga Counties do not seek damages "because of bodily injury." The insurance policies cover "sums" that DDM "becomes legally obligated to pay as damages because of 'bodily injury[.]'" "Bodily injury" means "sickness,[] or disease sustained by a person, including death resulting from any of these at any time." The parties agree that physical harm from opioid addiction is "bodily injury" under the insurance policies, but they dispute whether the counties, as governmental entities, were the ones that suffered damages "because of bodily injuries." Cincinnati argues that the counties specifically seek to recover for their own economic losses, not from any damage or loss allegedly suffered by their citizens.

{¶ 44} Both third amended complaints and both "amendments by interlineation" to the third amended complaints in the underlying lawsuits contain the following language regarding the absolute public nuisance claim: "In this Count [for common law absolute public nuisance], Plaintiff does not seek damages for death, physical injury to person, emotional distress, or physical damages to property, as defined under the Ohio Product Liability Act." The counties also allege that their claims "are not based upon or derivative of the rights of others" and that the counties are asserting "their own rights."

{¶ 45} The First District recently addressed a nearly identical situation in *Acuity v. Masters Pharm., Inc.*, 1st Dist. Hamilton No. C-190176, 2020-Ohio-3440. In *Acuity*, the First District considered whether an insurer had a duty to defend a pharmaceutical distributor against claims in the *Natl. Prescription Opioid* litigation. *Id.* at ¶ 3. Like Cincinnati's insurance policies, the polices at issue in *Acuity* covered "sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." *Id.* at ¶ 7. The First District held that the policies "potentially" cover some of the claims in the underlying lawsuits and that the insurer therefore had a duty to defend the distributor. *Id.* at ¶ 29.

{¶ 46} The *Acuity* Court explained that although the governmental entities were seeking recovery for their own economic losses, those losses included money spent on services like emergency, medical care, and substance-abuse treatment, which the governmental entities incurred "because of" the bodily injury suffered by individuals who became addicted to opioids. *Id.* at ¶ 28. The court further explained that "[i]t is not unprecedented for insurers to defend insureds against claims asserted by governmental entities, even where the government itself did not sustain bodily injury or property damage." *Id.* at ¶ 29. We note that as of the date of this opinion, the Ohio Supreme Court accepted this case for review and held oral argument on September 8, 2021. *Acuity v. Masters Pharmaceutical, Inc.*, 160 Ohio St.3d 1495, 2020-Ohio-5634, 159 N.E.3d 277.

{¶ 47} The court in *Acuity* relied on *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771 (7th Cir.2016). In *H.D. Smith*, West Virginia sued a pharmaceutical distributor for its role in the opioid epidemic, alleging that the distributor cost the state hundreds of millions of dollars every year for services including caring for citizens who suffer drug-related injuries. *Id.* at 773. The insurance policy that Cincinnati issued the distributor covered damages "because of bodily injury." *Id.* The district court found that Cincinnati had no duty to defend because the underlying suit did not seek damages "because of bodily injury," but the Seventh Circuit reversed, finding that a policy that covers damages "because of" bodily injury is broader than a policy that covers damages "for" bodily injury. *Id.* at 774.

{¶ 48} We note that a Delaware state court and the Western District of Pennsylvania have relied on *Acuity* and *H.D. Smith* to also find that the allegations in the Cuyahoga and Summit County cases seek damages "because of bodily injury." *Rite Aid Corp. v. ACE Am. Ins. Co.*, Sup. Ct. of Delaware No. N19C-04-150 EMD CCLD, 2020 Del. Super. LEXIS 2797 (Sept. 22, 2020); *Giant Eagle, Inc. v. Am. Guar. & Liab. Ins. Co.*, 499 F.Supp.3d 147, 165-167 (W.D.Pa. Nov. 9, 2020).[3]

{¶ 49} Cincinnati argues that *H.D. Smith* and the cases applying it were wrongly decided because *H.D. Smith* improperly applied Illinois law. Cincinnati points to *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 243 Ill.App.3d 471, 611 N.E.2d 1083 (1993), and *Chicago v. Beretta U.S.A., Corp.*, 213 Ill.2d 351, 821 N.E.2d

---

[3] As of the date of this opinion, the Delaware Supreme Court has accepted *Rite Aid* for review. *Ace Am. Ins. Co. v. Rite Aid Corp.*, Del. Supreme Ct. No. 339, 2020, 2020 Del. LEXIS 435.

1099 (2005). In *Diamond*, an Illinois state court found that an insurer had no duty to defend a manufacturer of air conditioning equipment in a lawsuit in which an employer sued the manufacturer for breach of contract when the air conditioning system failed. *Id.* at 473-474. The employer sought damages for lost workdays and productivity of its employees, claiming that the office building became so hot that some employees became ill, and other employees could not sufficiently perform their duties. *Id.* The *Diamond* Court held that the damages the employer sought were not "on account of bodily injury." *Id.* In *Beretta*, the Illinois Supreme Court found that a city and county's claimed damages for the costs of emergency medical services and the treatment of victims of gun violence were "solely economic damages" that represented "costs incurred in the absence of harm to a plaintiff's person or property." *Beretta* at 423. We find that these cases do not undermine the holding in *H.D. Smith*. *Beretta* did not involve insurance coverage or the duty to defend, and the facts of *Diamond* present a more tenuous connection between bodily injury and claimed damages than government entities that face increased expenses to care for citizens who suffer bodily injuries from opioid use.

{¶ 50} Cincinnati further relies on a series of cases reaching the opposite result of *H.D. Smith*. *See Cincinnati v. Richie Ents. LLC*, W.D.Ky. No. 1:12-CV-00186-JHM, 2014 U.S. Dist. LEXIS 96510 (July 16, 2014); *Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 90 F.Supp.3d 1308 (S.D.Fla.2015); *Motorists Mut. Ins. Co. v. Quest Pharmaceuticals, Inc.*, W.D. Ky. No. 5:19-CV-00187-TBR, 2021 U.S. Dist. LEXIS 86071 (May 5, 2021); *Westfield Natl. Ins. Co. v. Quest Pharmaceuticals, Inc.*,

W.D. Ky. No. 5:19CV00083, 2021 U.S. Dist. LEXIS 86931 (May 6, 2021). However, we are not persuaded by these cases.

{¶ 51} The court in *Richie* improperly relied on the holding in a case in which the underlying litigation contained no allegations of bodily injury, *Medmarc Cas. Ins. Co. v. Avent Am.*, 612 F.3d 607 (7th Cir.2010), and we are therefore not persuaded by the holding in *Richie*. *See also Acuity* at ¶ 24 (questioning the validity of *Richie*); *Giant Eagle* at 167, fn. 11 (noting that any reliance on *Richie* is "misplaced" because *Richie* relied on *Medmarc*, which the Seventh Circuit in *H.D. Smith* distinguished); *Rite Aid* at 43 (finding that *Richie* and *Medmarc* "either view the alleged facts too narrowly or do not involve claims similar to those asserted in the Track One Lawsuits."). We are also not persuaded by *Anda*, *Motorists Mut.*, and *Westfield Natl. Ins.* because these cases rely on *Richie*.

{¶ 52} *Motorists Mut.* and *Westfield Natl. Ins.* are further distinguishable because they applied Kentucky law. In these two nearly identical opinions, the Western District of Kentucky distinguished *H.D. Smith* on the basis that the *H.D. Smith* court interpreted Illinois law to find that "because of bodily injury" is broader than "for bodily injury," but Kentucky law uses the phrases "because of" and "for" interchangeably. *Motorists Mut.* at 18; *Westfield Natl. Ins.* at 7-8, 18. However, the *Acuity* Court has already found that the holding of *H.D. Smith* "comport[s] with Ohio law," even though *H.D. Smith* applied Illinois law.[4] *Acuity* at ¶ 22.

---

[4] The parties dispute whether Ohio law recognizes a distinction between "for bodily injury" and "because of bodily injury," and they both point to *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, to support their arguments.

{¶ 53} Accordingly, we find the reasoning in *H.D. Smith* to be more persuasive than the line of cases relying on *Richie*. We follow the courts in *Acuity*, *Rite Aid*, and *Giant Eagle* that have likewise adopted the holding of *H.D. Smith*. Therefore, although the counties are expressly seeking economic damages, we find that at least part of those claimed damages are for services that the counties have arguably had to provide "because of bodily injury."

### C. "Caused by an Occurrence"

{¶ 54} Lastly, Cincinnati argues that even if Summit and Cuyahoga Counties were seeking "damages" "because of bodily injury," the insurance policies would not cover the damages because they could not have been caused by an "occurrence." Cincinnati contends that an "occurrence," by definition, is neither expected or intended by the insured, but here, the counties alleged that DDM expected or intended the harm. Cincinnati maintains that civil conspiracy requires a showing of malice, and absolute public nuisance requires a showing of intentional conduct. Cincinnati argues that, therefore, "[p]roof of these elements necessarily means proof that" DDM expected or intended to cause harm.

---

However, *Lager* does not provide guidance on the issue. In *Lager*, the Ohio Supreme Court interpreted an under-insured-motorist policy that provided coverage "because of bodily injury" but also excluded coverage "for bodily injury" if an insured is injured in a vehicle not covered under the policy. *Id.* at ¶ 7-9. The court noted that "because of bodily injury" and "for bodily injury" as used in the policy was a "semantic distinction" because the injury at issue in the case occurred in a vehicle not covered under the policy. *Id.* at ¶ 30. The court also noted that the "Sixth and Tenth Districts have stated that in some scenarios there may be meaningful distinctions between 'for bodily injury' and 'because of bodily injury,' but that assertion has not been sufficiently established by their analyses." *Id.* at ¶ 29. In sum, *Lager* is not helpful to our analysis in this case.

{¶ 55} The policies cover damages caused by an "occurrence," which the policies define as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Ohio Supreme Court has explained that "accidental" in this context means unexpected and unintended. *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 21. "[A]bsent contrary language in a policy, 'if the injury was not intentionally caused, then it was accidentally suffered.'" *Id.*, quoting *Rothman v. Metro. Cas. Ins. Co.*, 134 Ohio St. 241, 247, 16 N.E.2d 1115 (1938).

{¶ 56} However, Ohio law draws a distinction for the purposes of insurance coverage between an intent to act and an intent to cause injury. *See Physicians Ins. Co. of Ohio v. Swanson,* 58 Ohio St.3d 189, 569 N.E.2d 906 (1991), syllabus ("In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended."). Ohio courts will infer an intent to cause injury from an intent to act only when "the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm." *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 48.

{¶ 57} A claim for absolute public nuisance requires "either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault." *Hardin v. Naughton*, 8th Dist. Cuyahoga No. 98645, 2013-

Ohio-1549, ¶ 29, quoting *Metzger v. The Pennsylvania, Ohio & Detroit RR. Co.*, 146 Ohio St. 406, 66 N.E.2d 203 (1946), paragraph one of the syllabus. The claims for absolute public nuisance in the underlying cases are based on allegations that DDM's "nuisance-creating conduct was intentional." The counties allege that DDM "knew or should have known" that the opioids it distributed and sold would be obtained by persons with criminal purpose and that "[i]t was reasonably foreseeable" that DDM's conduct would result in a public nuisance.

{¶ 58} Although the counties allege that DDM intentionally marketed and distributed opioids, they do not claim that DDM intended to cause bodily injury to the counties' citizens or to increase the counties' costs for public services. The allegations may describe negligence or recklessness, but they do not rise to the level of claiming that DDM's intentional conduct was so intrinsically tied to causing harm that the intentional acts necessarily resulted in the harm. Accordingly, we find that the alleged public nuisance was arguably "accidentally suffered" and therefore "caused by an occurrence" within the meaning of the insurance policies. *See also Giant Eagle*, 499 F.Supp.3d 147 at 168 (finding that Summit and Cuyahoga Counties' claims for public nuisance are arguably based on an "accident" and thus an "occurrence" under the relevant insurance policies).

{¶ 59} We need not address Cincinnati's arguments regarding the civil conspiracy claim because for Cincinnati to have duty to defend, the underlying complaints must contain only one potentially covered claim. *See Sharonville*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 13. As we have found that

the insurance policies arguably or potentially cover the absolute public nuisance claim, the parties' arguments regarding the civil conspiracy claim are moot.

{¶ 60} Accordingly, we find that Cincinnati's commercial general liability insurance policies arguably or potentially cover the underlying absolute public nuisance claims against DDM, and Cincinnati therefore has a duty to defend DDM against all the claims in the underlying actions. We find there is no genuine issue of material fact, DDM is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion in favor of DDM. Therefore, the trial court did not err in granting DDM's summary judgment motion and denying Cincinnati's summary judgment motion.

{¶ 61} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
LISA B. FORBES, J., CONCUR